THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT C. THOMAS, Defendant-Appellant.

Second District   No. 2—89—0856

Opinion filed June 26, 1990.

William P. O'Connor, of Orland Park, and James J. Flynn, of George Patrick Lynch, Ltd., and Edwin C. Thomas III and David M. Novak, both of Bell, Boyd & Lloyd, both of Chicago (George P. Lynch, of counsel), for appellant.

James E. Ryan, State's Attorney, of Wheaton (Barbara A. Preiner, Assistant State's Attorney, and William L. Browers and Martin P. Moltz, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE INGLIS delivered the opinion of the court:

Defendant, Robert Thomas, was charged by complaint with driving under the influence of alcohol (DUI) (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501(a)(2)) and driving in the wrong lane (Ill. Rev. Stat. 1987, ch. 95½, par. 11—701). Following a jury trial, defendant was found guilty of both offenses and was sentenced to one year's probation and 60 days in the county jail, and was fined $550 plus court costs. Defendant filed a timely notice of appeal.

On appeal, defendant contends that: (1) the jury was improperly allowed to consider material which had not been admitted into evidence; (2) the denial of his motion for a substitution of judge deprived him of a fair trial; (3) his motion to suppress should have been granted because his arrest was without probable cause; (4) his fifth and sixth amendment rights were violated when he was deprived of his right to consult with his attorney; (5) the trial court erred in limit-

ing cross-examination of a police officer and in allowing hearsay and irrelevant testimony into evidence; (6) the jury instructions were improper; and (7) the State's Attorney's comments at trial were improper. We reverse and remand.

The following facts were adduced at defendant's trial. Officer Mark Keller of the Hinsdale police department was the State's first witness. Officer Keller testified that he received a radio dispatch on December 23, 1987, at approximately 12:07 a.m., that an intoxicated driver was driving a black Cadillac with license plate number JTL 2359 (we note here that the plate number was also referred to as JBL 2359 at other times during the trial). A few minutes later, Officer Keller observed the vehicle in question in a residential neighborhood in Hinsdale. Keller began to follow the vehicle and noticed that it was being driven down the center of the street. The automobile also "cut the corner" when making a left turn and continued to drive down the center of the street. Officer Keller stated that there were no cars parked on either side of the street and no obstructions which would require the vehicle to be driven in the center of the street.

Shortly thereafter, Officer Keller activated his overhead lights to stop the Cadillac. Officer Keller followed the vehicle, and both automobiles pulled into a private driveway. Keller later identified defendant as the driver of the automobile. Keller stated that defendant used the top of the car door frame to "pull himself up and steady himself" as he got out of the car. Keller noticed "a strong odor of alcoholic beverage" on defendant's breath and requested defendant's driver's license three times before receiving it. Officer Keller then requested defendant to recite the alphabet as a part of a field sobriety test. Defendant's response contained only 14 letters. Defendant then refused to perform any other tests and attempted to get his driver's license out of Officer Keller's hand. Defendant was then placed under arrest, handcuffed, placed in the squad car, and transported to the police station.

At the station, defendant was read a "warning to motorist" and was requested seven different times to take a breathalyzer test. Defendant refused to take a breathalyzer test. Officer Keller stated that defendant called each of the officers at the station several vulgar and insulting names, and he described defendant as "cocky." Defendant also asked to speak with his brother, an attorney, on several occasions. Officer Keller further testified that a videotape was taken of defendant during his stay at the police station. The tape was admitted into evidence and played for the jury.

On cross-examination, Officer Keller described the residential

streets in question as "approximately 30 feet wide" without a painted line in the center to divide the street. He stated that the streets could accommodate up to three cars, including any parked cars. It was Officer Keller's opinion that two cars moving in opposite directions could not pass each other if there were cars parked on each side of the street. In addition, Officer Keller stated that there was snow on the ground from two previous snowfalls, but the roads had been cleared and were dry on the night in question.

Officer Keller also indicated that it was standard procedure to remove car keys from a person in custody, but the procedure was not complied with in this case. Furthermore, Officer Keller stated that he had previously arrested 50 persons for DUI, with 40 of them agreeing to take a breathalyzer test. On redirect examination, Keller stated that 38 of the 40 arrestees who took the test failed the test in that they "blew .10 or more."

Officer Mark Mandarino of the Hinsdale police department testified that he assisted Officer Keller in arresting and handcuffing defendant on the night in question. Officer Mandarino stated that defendant was not cooperating with Keller and told the officers "[l]et's be civilized about this." Mandarino further stated that he smelled a "strong odor of alcohol" on defendant's breath during the arrest. Officer Mandarino then returned to the Hinsdale police station and observed defendant in the "booking room." It was Mandarino's opinion that defendant was under the influence of alcohol. He based his opinion on defendant's "slurred and confused" speech, the odor of alcohol, and by the derogatory comments defendant made to the police officers.

On cross-examination, Officer Mandarino testified that he could not tell how much defendant had to drink based on the odor of alcohol. In addition, he did not see defendant stagger or sway on the night in question. He also stated that there was "deep snow" on the ground around the driveway where defendant's car was parked.

Officer Richard Birdsong of the Hinsdale police department testified that he was the supervising officer on the night in question. Officer Birdsong stated that he received a phone call from defendant's brother, an attorney, requesting the police to come and remove defendant's car from the driveway so that he could come down to the station and represent defendant. Officer Birdsong asked defendant for the car keys, but defendant refused to give them to him, stating that he didn't trust the police officers. During this conversation, Birdsong noticed a "strong odor" of alcohol on defendant's breath. Following another phone call from defendant's brother, defendant gave Officer

Birdsong the keys to the car so that it could be moved. It was Officer Birdsong's opinion that, based on defendant's slurred speech, abusive language, and odor of alcohol on his breath, defendant was under the influence of alcohol.

Following Officer Birdsong's testimony, the State rested. Defendant's motion for a directed verdict was denied.

Defendant then testified that he was a licensed attorney who no longer practiced law but instead was the chief executive officer and president of a steel company. Defendant stated that he arrived at work at approximately 8 a.m. on December 22, 1987, and worked the entire day. At approximately 4 p.m., defendant had a meeting with Bob Wasz, a marketing consultant to the steel company. The meeting lasted until approximately 8 p.m., and defendant and Wasz drove, in separate cars, to a restaurant to meet with defendant's brother for a dinner meeting. Defendant stated that his brother was a partner in the Chicago law firm of Bell, Boyd and Lloyd and acted as corporate counsel for the steel company. After his brother arrived at the restaurant, the three men ate large dinners and shared a bottle of white wine. Defendant stated that he left the restaurant around 11:30 p.m. and had no other alcoholic beverages to drink other than two glasses of wine.

Defendant further testified that he drove his brother to the train station in Hinsdale to get his brother's car. Defendant stated that he then drove to his brother's house in Hinsdale, following his brother. Defendant recalled snow being piled up on the curbs of the streets, although the roads themselves were plowed. However, there were cars parked on both sides of the streets, forcing defendant to drive down the center of the street. As defendant got close to his brother's house, he noticed a Hinsdale police department squad car proceeding directly behind him. As defendant began to pull into his brother's driveway, the police car activated its overhead lights. Defendant stated that he stopped at all stop signs and used his directional signals when making any turns. In addition, defendant was observing the speed limits at all times.

After entering the driveway, defendant stopped his car, turned off the motor, and got out of the car. Defendant stated that he did not have any trouble getting out of the car or walking on the driveway. Defendant met Officer Keller in the driveway and asked why he was being stopped, but Officer Keller refused to tell him and only requested to see his driver's license. Defendant gave his license to Officer Keller and was later placed under arrest. Defendant stated that he did not perform any tests and did not recite the alphabet to Officer

Keller. Defendant was searched, and the officer attempted to hand-cuff him, at which defendant replied, "[l]et's be civilized about this." Officer Keller then grabbed defendant's arm and twisted it behind his back, causing defendant pain. After being handcuffed, defendant was thrown into the squad car headfirst. Officer Keller then removed the keys to defendant's car and transported defendant to the police station.

On cross-examination, defendant agreed with the State's Attorney that he previously testified, at a suppression hearing on August 22, 1988, that he had "several" glasses of wine to drink on the evening in question. In addition, defendant again denied using his car door to balance himself as he got out of the car and also denied trying to take his driver's license out of Officer Keller's hand. Defendant also admitted to having a speech impediment and using "insulting" language on the night in question.

On redirect examination, defendant testified that he used the "uncomplimentary" language because he was very upset at the way the police officers treated him. In addition, defendant stated that he was "nervous" and "scared."

Edwin Thomas (Thomas), defendant's brother, testified that he was an attorney who represented defendant personally and also served as corporate counsel for the steel company. Thomas stated that he met with defendant and Wasz on December 22, 1987, at approximately 9 p.m. for a dinner meeting. The three men ate dinner, shared a bottle of wine, and discussed business matters. Thomas left the restaurant with defendant at approximately 11:30 p.m., and defendant drove them to the Hinsdale train station to pick up Thomas' car. Thomas stated that he drove home after picking up his car, with defendant following right behind him in his own car.

Thomas described the road conditions as clear of snow, although there was snow piled up on the curbs. There were cars parked on both sides of the streets, thus causing both Thomas and defendant to drive down the center of the street. There was no other traffic on the streets at that time.

Thomas testified that he noticed a squad car with its headlights "blinking" immediately behind defendant's car as they pulled into Thomas' driveway. Thomas approached defendant and Officer Keller and told Keller that defendant was one of Thomas' clients. Keller then placed handcuffs on defendant and threw him into the squad car face first. Thomas "got excited" and started to shout at Keller. However, Keller ignored Thomas, removed the keys from defendant's automobile, and transported defendant to the police station. Thomas tes-

tified that he asked Keller to move defendant's car so that he could get out of his driveway, but Keller refused to do so.

Thomas further testified that he made several telephone calls to the Hinsdale police department in an attempt to get defendant's car removed from the driveway. The car was removed approximately one hour after the initial telephone call. Thomas stated that he then went to the police station to converse with defendant. It was Thomas' opinion that defendant was not intoxicated on the night in question.

On cross-examination, Thomas testified that he did not hear the conversation between defendant and Officer Keller and thus did not know if Keller asked defendant to recite the alphabet. Thomas also stated that defendant had "several" glasses of wine to drink that night.

Robert Wasz testified that he was a consultant for defendant's steel company and met with defendant and defendant's brother on December 22, 1987, for a dinner meeting. Wasz stated that the three men ordered a bottle of wine to go along with their dinner. Wasz left the restaurant around 11:15 p.m. It was his opinion that defendant was not under the influence of alcohol on the night in question.

The defense rested following Wasz's testimony. The State recalled Officer Mandarino, who testified that neither he nor Officer Keller struck defendant or pushed him into the hood or trunk of any vehicle. In addition, he stated that defendant was not thrown into the squad car "face down."

The State also recalled Officer Birdsong, who testified that defendant never complained about the way Officer Keller physically handled defendant during the arrest. The State then rested its case.

Following closing arguments, the jury returned guilty verdicts on both charges. Defendant was sentenced to one-year probation, 60 days' in the Du Page County jail, 100 hours of public service, and was fined $500 plus court costs on the DUI conviction. He also received a $50 fine on the improper lane usage charge. Defendant filed a timely notice of appeal.

### VIDEOTAPE EVIDENCE

On appeal, defendant first contends that the jury was improperly allowed to consider material during its deliberations even though the material was never admitted into evidence at trial. During its deliberations, the jury was permitted to view a videotape of defendant made at the Hinsdale police station. However, the tape, which is a part of the record on appeal, also contained two other DUI arrests at the Hinsdale police station, with neither arrest involving defendant nor in

any way associated with the events of the case at bar.

Defendant argues that he was "gravely prejudiced" by these two unrelated incidents in that both of the other persons on the videotape took performance and breathalyzer tests, while defendant did neither. Defendant notes that both the State's Attorney and Officer Keller were aware of the other episodes on the tape, while defendant was not. Defendant argues that the effect of the prejudice in this case requires reversal. We agree.

█ █ Defendant correctly points out that it is a well-established rule that it is error to permit a jury to take exhibits into the jury room if they have not been introduced into evidence. (*People v. Holcomb* (1938), 370 Ill. 299, 300; *People v. Hanson* (1980), 83 Ill. App. 3d 1108, 1111.) The State argues that the trial court is permitted to allow exhibits to go into the jury room if they have been admitted into evidence and are relevant to any material issue in the case. (*People v. Arnold* (1985), 139 Ill. App. 3d 429, 435; *People v. Watson* (1982), 107 Ill. App. 3d 691, 696.) We agree with the State that the trial court properly allowed the jury to view the videotape episode of defendant at the police station because it was properly admitted into evidence and was relevant to the material issue in the case. However, the two other episodes on the tape had not been introduced into evidence at trial and were not relevant to any issue in the case. Thus, it was error for the jury to view the videotape of the two unrelated arrests.

Having determined that it was error, we must next decide whether the error resulted in substantial prejudice to defendant to warrant a new trial. We note that not every instance in which unauthorized information reaches the jury results in reversible error. (*People v. Holmes* (1978), 69 Ill. 2d 507, 519.) Only when a defendant is prejudiced is reversal required. *People v. Palmer* (1984), 125 Ill. App. 3d 703, 711.

█ We agree with defendant's contention that he was prejudiced by the two unrelated episodes contained on the videotape. Episode one on the videotape shows a woman who appears to be intoxicated (she failed the "finger-to-nose" test and also failed to properly recite the alphabet, with approximately 10 to 14 letters being audible) and was obviously nervous. She cooperated fully with the police officers, took the breathalyzer, and recorded a .22 reading. The woman told the officers that she had two or three "lite" beers to drink, after which much laughter could be heard in the background.

Episode two involved a young man (approximately 20 years old) who also cooperated with the police, agreeing to take sobriety and breathalyzer tests (with a .12 reading). The officer told the man that

the offense was not very serious and that he would probably receive court supervision as a result. Thereafter, the taping of defendant began. The jury was able to see defendant not cooperating with the police and using several derogatory terms to describe the officers. In addition, defendant did not perform any sobriety tests and did not take a breathalyzer.

■ We find that defendant was prejudiced by the jury viewing these two unrelated episodes for several reasons. Both of the other arrestees took performance and breathalyzer tests, while defendant did not. Both arrestees were cooperative with the officers, while defendant was not. Most importantly, the jury was given the impression, based on the comments made during the second nonrelated arrest, that a DUI arrest was not very serious. This minimization of a DUI arrest, which is what defendant was also charged with, worked to defendant's detriment in that the seriousness of the offense was called into question.

It is our opinion that the submission of the videotape to the jury, which contained material not introduced into evidence at trial, resulted in reversible error in this case. We therefore reverse defendant's convictions and remand the cause for a new trial. Since we have determined that this case must be retried, we will address defendant's other contentions on appeal as they may arise again upon retrial of this case.

### SUBSTITUTION OF JUDGE

Defendant next contends that his motion for a substitution of judge should have been granted and the denial of the motion deprived him of a fair trial. Defendant filed the motion nearly 15 months after the commencement of the case and seven months after the trial court ruled in favor of the State on defendant's motion to suppress. The motion was filed pursuant to section 114—5(d) of the Code of Criminal Procedure of 1963 (Code) (Ill. Rev. Stat. 1987, ch. 38, par. 114—5(d)). Section 114—5(d) of the Code provides, in pertinent part:

> "In addition to the provisions of subsections (a), (b) and (c) of this Section the State or any defendant may move at any time for substitution of judge for cause, supported by affidavit. Upon the filing of such motion a hearing shall be conducted as soon as possible after its filing by a judge not named in the motion; provided, however, that the judge named in the motion need not testify, but may submit an affidavit if the judge wishes."
> (Ill. Rev. Stat. 1987, ch. 38, par. 114—5(d).)

Given that defendant alleged the actual prejudice of the trial judge,

the motion was based on "cause" and was thus timely filed under this section of the Code.

In the motion, defendant alleged that Judge Telander had been the chief of the criminal division of the Du Page County State's Attorney's office and had supervisory authority over the prosecution of defendant's case. Defendant indicated that he was unaware of Judge Telander's previous relationship with the State's Attorney's office. In addition, defendant stated that Judge Telander had "serious questions" about the veracity and credibility of defendant and defendant's brother after denying defendant's motion to suppress evidence. Judge Telander then transferred defendant's motion for substitution of judge to Judge Callum for a hearing.

On May 22, 1989, a hearing was held on the motion, at which the State stipulated to the above statements and also added that Judge Telander's supervisory authority over defendant's case lasted for approximately six months. After hearing arguments on the motion, Judge Callum denied the motion. Judge Callum determined that Judge Telander had no actual involvement in the prosecution of defendant's case, and, hence, there had been no showing of actual prejudice.

■ Defendant argues that Supreme Court Rule 63(C)(1)(b) (113 Ill. 2d R. 63(C)(1)(b)) required Judge Telander to recuse himself from presiding over the trial in this case. We disagree. Rule 63(C)(1)(b) provides:

> "C. Disqualification.
>
> (1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where
> * * *
> (b) he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it." 113 Ill. 2d R. 63(C)(1)(b).

Other courts in this State have been faced with similar questions concerning the propriety of a trial judge presiding over a trial in which he or she had some role in the prosecution or defense of the case. Recently, our supreme court determined, in *People v. Del Vecchio* (1989), 129 Ill. 2d 265, that a judge is not required to recuse himself anytime he has "knowledge of, contact with, or an interest" in the case over which he is presiding. (*Del Vecchio*, 129 Ill. 2d at 277.) In *Del Vecchio*, the court noted that the trial judge was a State's

Attorney during a previous case involving the defendant. The involvement was limited to assigning the case to another attorney and agreeing with the defendant's request to expedite the indictment. The court stated that the trial judge never acted "as counsel" in the defendant's case and that the defendant failed to show sufficient prejudice or bias of the judge. Thus, recusal was not required. 129 Ill. 2d at 276-78.

Several appellate court opinions have also dealt with this issue. In *People v. Lopez* (1989), 187 Ill. App. 3d 999, the defendant alleged that the trial judge was associated with a law firm which represented the defendant in a different case. However, the trial judge did not actually represent the defendant, but instead a partner in the law firm did so. The appellate court determined that this relationship did not suggest any actual involvement in the defendant's previous case such that recusal would be necessary. *Lopez*, 187 Ill. App. 3d at 1009-10.

Furthermore, in *People v. Lipa* (1982), 109 Ill. App. 3d 610, the court noted that the trial judge was not required to recuse himself in the case even though he approved a subpoena in his role as a supervising State's Attorney in connection with the offense over which he was presiding. (*Lipa*, 109 Ill. App. 3d at 612-13.) The court noted that the judge did not actively participate in the case. (109 Ill. App. 3d at 612.) Likewise, in *People v. Burnett* (1979), 73 Ill. App. 3d 750, the court determined that the trial judge's former role as a supervising State's Attorney, without any actual involvement in the prosecution of the case, would not require him to recuse himself from the case because he did not act "as counsel" in the case. *Burnett*, 73 Ill. App. 3d at 754-55.

Defendant correctly points out that this court, in *People v. Austin* (1983), 116 Ill. App. 3d 95, vacated the trial court's order because the trial judge "acted as counsel" in the case. The judge in *Austin* represented the defendant at her preliminary hearing and had thus established an attorney-client relationship *vis-a-vis* the case at issue. (*Austin*, 116 Ill. App. 3d at 99.) The court noted that the mere representation of the defendant, even though brief, was sufficient to require the trial judge to recuse himself from the case. 116 Ill. App. 3d at 100.

We find *Austin* distinguishable from the case at bar in that *Austin* involved the trial judge's actual representation of the defendant. In the present case, the trial judge's prior relationship to the case, if any, came as a result of his supervisory position in the State's Attorney's office. We find this distinction to be crucial in this case and believe that *Lopez*, *Lipa*, and *Burnett* support our decision that Judge

Telander was not required to recuse himself from this case.

█ We further reject defendant's contention that Judge Telander had a "personal bias or prejudice" against him in this case. Defendant argues that Judge Telander stated that he had "serious questions" about the credibility and the veracity of defendant and defendant's brother after denying defendant's motion to suppress. Defendant claims that *People v. Chatman* (1967), 36 Ill. 2d 305, supports his claim.

In *Chatman*, the supreme court granted the defendant a new trial based on an "ineffective assistance of counsel" argument. The defendant was charged by two indictments for rape. The defendant was convicted, in a bench trial, based on the charge in the first indictment. The trial judge stated that he had "no doubt in [his] mind" concerning the defendant's guilt, noting "[h]ow could there be with that kind of feeble, putrid alibi?" (*Chatman*, 36 Ill. 2d at 307.) The same judge, again without a jury, found the defendant guilty of a similar rape in the second trial. At no time did defense counsel move for a change of venue before the second trial, even though the defendant had an "absolute right" based on the trial judge's prejudice against him. (36 Ill. 2d at 309.) The supreme court ruled that the defendant did not receive a fair trial based on his attorney's inadequate representation. 36 Ill. 2d at 309.

We disagree with defendant's argument that *Chatman* controls the disposition of this issue in our case. Unlike *Chatman*, our case involved the trial court's ruling on defendant's motion to suppress and did not involve a complete trial with a verdict. Were we to agree with defendant's argument, a trial judge would rarely, if ever, be able to preside over a trial in a case in which the judge ruled against the defendant on a motion to suppress. Furthermore, both trials in *Chatman* were conducted without a jury, while defendant in the present case was tried by a jury. We note that in the case at bar the trial court's comments were limited to credibility and not defendant's guilt or innocence. We fail to find any actual prejudice in this case, unlike that found in *Chatman*, and thus hold that Judge Telander was not required to recuse himself from presiding over defendant's trial.

## MOTION TO SUPPRESS EVIDENCE

Defendant next contends that his motion to suppress evidence should have been granted because his arrest was without probable cause. Defendant argues that he was observing all traffic laws before he was stopped and thus Officer Keller had no probable cause to pull him over.

At the suppression hearing, Officer Keller testified that he received a radio dispatch indicating that a Cadillac with license JBL 2359 was being driven recklessly. Keller located the Cadillac approximately four minutes later and began to follow it through the streets of Hinsdale. The Cadillac, later identified as defendant's automobile, proceeded down the center of the street, even though there were not any cars parked on the road. Keller then saw defendant make a left turn, nearly hitting the left-hand curb with the automobile's tires. Shortly thereafter, Keller activated the overhead lights on his squad car and stopped defendant.

Defendant testified at the hearing that he observed all traffic laws on the night in question. Defendant admitted driving his car in the center of the street, but stated that he was forced to do so due to the parked cars on the street. Defendant denied that he almost hit the curb on any left turns. Defendant's brother substantiated defendant's testimony regarding defendant's driving during the period of time immediately before Officer Keller activated the overhead lights.

■ Thus, the trial court had to consider conflicting versions of what transpired immediately prior to the stop and subsequent arrest. The trial court found in favor of the State. Unless the trial court's decision on a motion to suppress is manifestly erroneous, a reviewing court will not disturb it. (*People v. Tisler* (1984), 103 Ill. 2d 226, 248; *People v. Starks* (1989), 190 Ill. App. 3d 503, 510.) We find no reason to disturb the trial court's ruling here because it was not manifestly erroneous.

We make this determination after reviewing the information available to Officer Keller prior to the arrest. As our supreme court has stated, the question is "[w]ould a reasonable person in that officer's position believe that a crime was being or had been committed?" *People v. Adams* (1989), 131 Ill. 2d 387, 398; *Tisler*, 103 Ill. 2d at 237.

As we stated above, the police were initially alerted to defendant's alleged reckless driving by a citizen informant. In general, courts have found citizen informants credible because they have witnessed criminal activity and acted with the intent to aid the police. (*Adams*, 131 Ill. 2d at 397.) In addition to the informant's telephone call, we must also consider Officer Keller's personal observations concerning defendant's driving on the night in question. While Keller's testimony differs sharply from that of defendant and defendant's brother, it was the trial court's responsibility to assess the credibility of the witnesses and the weight to be given their testimony. (*People v. Jaffe* (1986), 145 Ill. App. 3d 840, 846.) We see no reason to disturb the trial court's finding of probable cause in this case because a rea-

sonable person in Officer Keller's position could certainly believe that defendant was committing a crime in that he was operating a motor vehicle while under the influence of alcohol.

## RIGHT TO COUNSEL

Defendant next contends that his fifth and sixth amendment rights were violated when he was deprived of his right to consult with his attorney. Defendant argues that the police effectively prevented his attorney (Edwin Thomas) from coming to the police station by using defendant's car to block Thomas' driveway. As a result of this situation, defendant asserts that his statements made to the police were in violation of the fifth amendment and should not have been used as evidence against him at trial.

■ Initially, we note that the policies underlying the constitutional protections found in the fifth and sixth amendments are distinct. (*Rhode Island v. Innis* (1980), 446 U.S. 291, 300 n.4, 64 L. Ed. 2d 297, 307 n.4, 100 S. Ct. 1682, 1689 n.4.) The purpose of the sixth amendment is to provide legal assistance to the defendant during the "critical stages" of the criminal process. (*Brewer v. Williams* (1977), 430 U.S. 387, 398, 51 L. Ed. 2d 424, 436, 97 S. Ct. 1232, 1239.) The critical stages are reached after a " 'formal charge, preliminary hearing, indictment, information, or arraignment' " has been initiated against the defendant. (*Brewer*, 430 U.S. at 398, 51 L. Ed. 2d at 436, 97 S. Ct. at 1239, quoting *Kirby v. Illinois* (1972), 406 U.S. 682, 689, 32 L. Ed. 2d 411, 417, 92 S. Ct. 1877, 1882.) As *Kirby* pointed out, a defendant's sixth amendment right to counsel attaches only after "adversary judicial criminal proceedings" have been initiated against him. (*Kirby*, 406 U.S. at 689, 32 L. Ed. 2d at 417, 92 S. Ct. at 1882.) An arrest, in and of itself, does not involve an "adversary judicial criminal proceeding" such that the sixth amendment right to counsel would attach. (*United States v. Gouveia* (1984), 467 U.S. 180, 189-90, 81 L. Ed. 2d 146, 155-56, 104 S. Ct. 2292, 2298; *People v. Wilson* (1987), 116 Ill. 2d 29, 50.) The complained-of conduct in the present case occurred after defendant was arrested, but before any "formal" charges were brought against him. Consequently, we will review defendant's contention under a fifth amendment analysis.

Defendant primarily relies upon *Escobedo v. Illinois* (1964), 378 U.S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758, and *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, to support his position that his constitutional rights were violated in this case.

In *Escobedo*, the Court held that when an accused is a suspect in a criminal investigation and "has requested and been denied an oppor-

tunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution *** and that no statement elicited by the police during the interrogation may be used against him at a criminal trial." (*Escobedo*, 378 U.S. at 491, 12 L. Ed. 2d at 986, 84 S. Ct. at 1765.) In *Miranda*, the Court determined that the prosecution may not use any statements of the defendant which stem from custodial interrogation as evidence at trial unless the defendant is apprised of his constitutional right to remain silent and consult with an attorney. (*Miranda*, 384 U.S. at 444, 16 L. Ed. 2d at 707, 86 S. Ct. at 1612.) The Court noted that there can be no questioning if the defendant indicates that he does not want to be interrogated or wishes to consult with an attorney before speaking. 384 U.S. at 444-45, 16 L. Ed. 2d at 707, 86 S. Ct. at 1612.

The State disagrees with defendant's contention that his constitutional rights were violated in this case, arguing instead that *Moran v. Burbine* (1986), 475 U.S. 412, 89 L. Ed. 2d 410, 106 S. Ct. 1135, controls this issue. In *Moran*, the defendant waived his right to remain silent and to speak with an attorney after being fully informed of his *Miranda* rights. The defendant was not aware, however, that his sister was attempting to secure counsel to represent him. He was also unaware that an assistant public defender had called the police station and was informed that the defendant would not be questioned that evening. The Supreme Court determined that the events occurring outside of the defendant's presence had no bearing on his waiver of his *Miranda* rights. (*Moran*, 475 U.S. at 422, 89 L. Ed. 2d at 421, 106 S. Ct. at 1141.) The Court noted that, while the police officers' conduct in the case was "highly inappropriate," the "deliberate misleading" of an attorney was irrelevant in determining whether the defendant's fifth amendment rights were violated. (475 U.S. at 423-25, 89 L. Ed. 2d at 422-23, 106 S. Ct. at 1142-43.) The Court stated, in a footnote, that the result would have been different had the defendant requested the presence of counsel during the interrogation. 475 U.S. at 423 n.1, 89 L. Ed. 2d at 422 n.1, 106 S. Ct. at 1141-42 n.1, citing *Edwards v. Arizona* (1981), 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880.

We agree with the State that *Moran* supports the proposition that the alleged police frustration of defendant's brother's attempts, as an attorney, to speak with defendant, was irrelevant in determining whether defendant's statements were in violation of his fifth amendment rights. However, we do not believe that *Moran* controls the dis-

position of this issue due to the fact that defendant, in our case, requested to speak with his attorney after he arrived at the police station, unlike the situation found in *Moran*. Notwithstanding this distinction, defendant's argument must still fail.

■ Defendant apparently argues that *Miranda* requires the suppression of all statements made after a defendant has been arrested, unless the defendant is first warned of his right to remain silent and to have counsel present during questioning. However, *Miranda* simply requires all *interrogation* to cease after a defendant invokes his right to speak with an attorney. (*Edwards v. Arizona* (1981), 451 U.S. 477, 484-85, 68 L. Ed. 2d 378, 386, 101 S. Ct. 1880, 1885; *Miranda*, 384 U.S. at 474, 16 L. Ed. 2d at 723, 86 S. Ct. at 1627.) In *Edwards*, the Court stated that an exception to the *Miranda* rule exists if the defendant "himself initiates further communication, exchanges, or conversations with the police." *Edwards*, 451 U.S. at 485, 68 L. Ed. 2d at 386, 101 S. Ct. at 1885.

■ Applying these Supreme Court cases to the facts in the present case leads us to conclude that defendant's fifth amendment rights were not violated. It does not appear that the police interrogated defendant after he was arrested. The only question defendant was asked was whether he wished to take a breathalyzer test. Defendant's response to this question, which in this case was a refusal, was not constitutionally protected under the fifth amendment. (*South Dakota v. Neville* (1983), 459 U.S. 553, 564, 74 L. Ed. 2d 748, 759, 103 S. Ct. 916, 923; *People v. Rolfingsmeyer* (1984), 101 Ill. 2d 137, 142.) The *Neville* Court specifically stated that a police officer's inquiry as to whether a defendant will take a blood-alcohol test is not an interrogation within the context of *Miranda*. (*Neville*, 459 U.S. at 564 n.15, 74 L. Ed. 2d at 759 n.15, 103 S. Ct. at 923 n.15.) Instead, the Court equated the question with a request for the accused to submit to fingerprinting or having a photograph taken.

■ We also agree with the State that defendant's responses to the questions concerning whether he would take a breathalyzer test in no way violated his right to counsel in this case, even though defendant requested to speak with his attorney before deciding whether to take the test. We have previously held that defendant did not have a right to consult with an attorney before deciding whether to submit to the test. *People v. Graziano* (1986), 151 Ill. App. 3d 475, 479; *People v. Gaddi* (1986), 145 Ill. App. 3d 227, 230.

We therefore find that defendant's constitutional rights were not violated.

Defendant next contends that the trial court erred in limiting the cross-examination of Officer Keller and in allowing hearsay and irrelevant testimony into evidence at trial. We will address each contention in turn.

Defendant's first argument concerns the attempted cross-examination of Officer Keller regarding the "alphabet" field sobriety test. On direct examination, Keller testified that defendant failed to properly recite the alphabet in that he mentioned only 14 letters. Keller stated that he wrote the 14 letters into the police report two to three hours after the alphabet test was administered and relied on his memory to do so. On cross-examination, defense counsel attempted to test Officer Keller's memory by staging a simulation of the test. The trial court sustained the State's objection to the demonstration. The court stated:

"You are free to cross examine him. *** [B]ut I am not going to allow any tests in court, any little demonstrations.

I understand your position, but it is not the same. Conditions are not the same. He is in court. He can be nervous.

I don't think it's a proper question and a proper thing to do in front of a jury in a criminal case.

I am convinced it's within my discretion and I am exercising my discretion and I am not allowing it. *** I am not going to allow you to request that he memorize certain letters now and then ask him at a later time during the trial if he remembers them."

■■■ Defendant correctly points out that the confrontation clause of the sixth amendment guarantees him the right to cross-examine a witness testifying against him. (*Delaware v. Van Arsdall* (1986), 475 U.S. 673, 678, 89 L. Ed. 2d 674, 683, 106 S. Ct. 1431, 1435; *Davis v. Alaska* (1974), 415 U.S. 308, 315-16, 39 L. Ed. 2d 347, 353, 94 S. Ct. 1105, 1110.) However, this right does not prevent a trial court from imposing some limitations on defense counsel's cross-examination of a prosecution witness. (*Van Arsdall*, 475 U.S. at 678, 89 L. Ed. 2d at 683, 106 S. Ct. at 1435; *People v. Harris* (1988), 123 Ill. 2d 113, 144.) Instead, a trial court has wide discretion in imposing reasonable limitations concerning the cross-examination of a witness. (*Harris*, 123 Ill. 2d at 144.) A defendant seeking reversal of a trial court's decision to limit cross-examination must show that the court clearly abused its discretion and, as a result, "manifest prejudice" resulted. *People v. Smith* (1988), 172 Ill. App. 3d 94, 109; *People v. Hinton* (1984), 122 Ill. App. 3d 89, 95.

We disagree with defendant's contention that the trial court abused its discretion in this case. The trial court allowed defendant to cross-examine Officer Keller concerning the "alphabet" field sobriety test, including the problems associated with relying on his memory to write down the sequence of letters defendant allegedly recited on the night in question. Thus, the jury was aware of the method Officer Keller used to place the letters into the police report. The trial court was well within its discretion in refusing to allow defendant to engage Officer Keller into a courtroom demonstration *vis-a-vis* the field sobriety test.

Defendant next argues that he was deprived of a fair trial due to hearsay testimony admitted at trial. On direct examination, Officer Keller testified that he received a radio dispatch informing him of an "intoxicated driver" in a Cadillac with a license plate number JTL 2359. The trial court overruled defendant's hearsay objection, stating that the evidence was admissible for the limited purpose of explaining why Officer Keller took the particular course of action on the night in question. The court then immediately instructed the jury, stating:

> "Ladies and Gentlemen, that testimony is offered strictly for the purpose of showing why Officer Keller took a certain course of action after he received that broadcast.
>
> It is not offered to show what was in the broadcast was, in fact, true, but in order that you understand why Officer Keller did what he did.
>
> That limited testimony is offered strictly to show his course of action and not for the truth of that broadcast."

Defendant argues that the court erred in admitting this testimony because there was no issue in this case as to why Officer Keller began his search for an intoxicated driver on the night in question. The State disagrees, arguing instead that *People v. Gacho* (1988), 122 Ill. 2d 221, *cert. denied* (1988), 488 U.S. 910, 102 L. Ed. 2d 252, 109 S. Ct. 264, supports the trial court's ruling in this case.

In *Gacho*, our supreme court stated that it was not error to admit evidence which explained a police officer's investigatory procedure as long as the substance of the conversation was not revealed. (*Gacho*, 122 Ill. 2d at 248.) Such testimony is proper because it is within the officer's personal knowledge and is competent to explain investigatory procedure. (*People v. Pryor* (1989), 181 Ill. App. 3d 865, 870; *People v. White* (1985), 134 Ill. App. 3d 262, 282, *cert. denied* (1986), 475 U.S. 1126, 90 L. Ed. 2d 194, 106 S. Ct. 1650.) However, the testimony is inadmissible hearsay if it recounts the substance of the conversation. *Pryor*, 181 Ill. App. 3d at 870.

■■■ In the present case, the testimony of Officer Keller went beyond his investigatory procedure and included the content of the radio dispatch regarding the telephone call informing the police of an intoxicated driver. The State's Attorney asked Officer Keller if "[t]he *content* of this dispatch was that an intoxicated subject was heading westbound on Fourth from County Line Road; yes or no?" (emphasis added), "[d]escription of this vehicle was a Cadillac?," and "[l]icense plate of this vehicle was JTL 2359?" Each of these questions involves the substance of the conversation and, as such, was inadmissible hearsay. On retrial, the officer may state that a citizen complaint was received and acted upon but may not recount the substance of the conversation concerning the complaint.

Defendant also contends that the trial court allowed irrelevant testimony, which was highly prejudicial to his defense, into evidence at trial. In particular, defendant argues that it was improper for Officer Keller to testify as to the number of arrestees other than defendant who took the breathalyzer test and failed it. At trial, Keller testified on direct examination that he had previously made approximately 50 arrests for DUI. On cross-examination, Keller stated that of the 50 arrestees, approximately 10 refused to take a breathalyzer. On redirect examination, Keller stated that 38 of the 40 arrestees who took the test "failed" the test in that they "blew .10 or more."

Defendant argues that the jury could infer from this testimony that most arrestees routinely took the breathalyzer test, even though defendant refused to do so. In addition, the jury could also infer that Keller was a "walking breathalyzer machine" given his "exceptionally accurate" field appraisals of drivers as being under the influence of alcohol.

We agree with defendant that it was generally improper for Officer Keller to testify as to the number of DUI arrestees who "failed" the breathalyzer test. However, this testimony was elicited only after defendant "opened the door" when he cross-examined Officer Keller concerning the number of arrestees who refused to take the test. As such, the State contends that the redirect examination was proper in this case.

■■■ The general rule is that a party who "opens the door" on a particular subject is precluded from objecting on the same subject, unless the objection is based on grounds not violated by the party's first admission of the evidence. (*People v. Griffiths* (1983), 112 Ill. App. 3d 322, 328.) The reason for this rule is that the party who is now objecting to the testimony actually invited the testimony and thus is not permitted to claim that the testimony deprived him of a fair trial.

(*People v. Wadley* (1988), 169 Ill. App. 3d 1036, 1045.) By questioning Officer Keller regarding the number of persons who refused to take the test, defendant opened the door to the State's redirect examination concerning the number of persons who failed the test. Thus, it was proper to admit this testimony given that defendant "opened the door" during cross-examination. Such testimony should not be admitted on retrial unless defendant again questions Officer Keller concerning the number of other arrestees who refused to take the breathalyzer test.

### JURY INSTRUCTIONS

Defendant next argues that he was prejudiced by a jury instruction in this case. The jury was instructed, over defendant's objection, that:

"A defendant does not have a right to consult an attorney prior to taking a breathalyzer test."

Defendant contends that the instruction was erroneous in that it was "totally at odds" with *Escobedo* and *Miranda*.

Defendant correctly asserts that a jury instruction should not be given if it does not accurately state the law or if it is confusing or misleading. (*People v. Jones* (1986), 145 Ill. App. 3d 835, 838; *People v. Dixon* (1982), 105 Ill. App. 3d 340, 348.) In the present case, defendant never took a breathalyzer test. In addition, this was a criminal case (DUI) and was not concerned with the statutory summary suspension civil proceedings. With these differences in mind, it is our opinion that this instruction is confusing and misleading and should not be given on retrial.

### ALLEGED IMPROPER ARGUMENTS

Defendant's last contention on appeal is the State's Attorney made several improper comments during closing argument which resulted in prejudice to defendant. Defendant first asserts that it was improper for the State's Attorney to refer to defense counsel's attempt to have Officer Keller test his memory in court as "unfair." Defendant's objection was sustained, and the jury was told not to consider the remark. We believe that any prejudice which may have occurred as a result of this comment was cured when the trial court sustained the objection and instructed the jury to disregard the remark. *People v. Baptist* (1979), 76 Ill. 2d 19, 30; *People v. Wright* (1989), 186 Ill. App. 3d 159, 166.

Defendant also claims that it was improper for the State's Attorney to refer to his defense as a "smoke screen." Other courts

have determined that the use of "smoke screen," "dropping a smoke bomb," and "veil of smoke," while generally improper and better left unsaid, did not involve prejudice of a sufficient magnitude to require a new trial. (See *People v. Burnett* (1963), 27 Ill. 2d 510, 517-18; *People v. Williams* (1984), 127 Ill. App. 3d 231, 234; *People v. Brown* (1977), 47 Ill. App. 3d 920, 930-31.) On retrial, the State's Attorney should refrain from using such a characterization of defendant's defense.

■ Defendant also contends that it was improper for the State's Attorney to argue that defendant's brother, Edwin Thomas, was also under the influence of alcohol on the night in question. Defendant argues that the comment was improper because there was no evidence to support the claim. We disagree. As the State correctly points out, a prosecutor may draw legitimate inferences from the facts in evidence. (*People v. Alvarez* (1981), 93 Ill. App. 3d 111, 116; *People v. Lewis* (1979), 75 Ill. App. 3d 259, 288.) At trial, defendant's brother testified that he shared a bottle of wine with defendant and Wasz on the night in question. In addition, the testimony of Officers Birdsong and Mandarino indicated that Edwin was belligerent, rude, and used obscene language during his phone calls to the police station and in their in-person conversations. This evidence leads us to the conclusion that the State's Attorney's comment concerning Edwin's impairment was proper because it was supported by the evidence.

■ We also disagree with defendant's last contention that it was improper for the State's Attorney to refer to defendant's refusal to "take additional field sobriety tests." This comment was proper because it was based upon the evidence at trial and, furthermore, in no way violated defendant's privilege against self-incrimination as guaranteed by the fifth amendment. See *People v. Saturday* (1985), 135 Ill. App. 3d 1052, 1054 (evidence of the defendant's refusal to submit to a field sobriety test is proper and does not violate any constitutional or statutory rights); *People v. Roberts* (1983), 115 Ill. App. 3d 384, 387-88.

For the above stated reasons, the judgment of the circuit court of Du Page County is reversed, and this cause is remanded for a new trial.

Reversed and remanded.

DUNN and McLAREN, JJ., concur.