THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DONALD SATURDAY, Defendant-Appellant.

Second District   No. 2—84—0550

Opinion filed August 30, 1985.

William Earl Glisson, of Aurora, for appellant.

Philip DiMarzio, State's Attorney, of Sycamore (Phyllis J. Perko and Sally A. Swiss, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE STROUSE delivered the opinion of the court:
The defendant was arrested on an Illinois citation by the Sycamore police department on November 12, 1983, for driving under the influence of alcohol in violation of the Illinois Vehicle Code, section 11–501(a) (Ill. Rev. Stat. 1983, ch. 95½, par. 11–501(a)). The defendant entered a plea of not guilty, waived a jury and filed a motion to suppress. The defendant, through his attorney and the State's Attorney, stipulated to the following relevant facts.

At 2 a.m. on November 12, 1983, Officer Charles Mayeda of the Sycamore police department observed taillights approximately 1½ blocks away on the wrong side of the street. As the officer approached the vehicle, he saw it go through a stop sign at approximately 10 to 15 miles per hour. After the officer activated his Mars lights, the defendant pulled into a parking lot 200 yards ahead. The officer stopped approximately 25 feet behind the defendant's automobile. The defendant exited, appeared unsteady, staggered and had difficulty with his balance. When asked for his driver's license, he said it was suspended because he had three moving violations. The officer smelled the odor of liquor on his breath. His speech was slurred, and, although he mumbled, the officer understood him.

The officer asked the defendant to perform four standard field sobriety tests: to walk heel to toe; to put his finger to his nose; to stand on one leg; and to say the alphabet. The defendant was unable to walk heel to toe because he lost his balance; he could not touch his index finger to his nose with either hand; he was unable to stand on either his right or left foot; and he could not say the alphabet without losing his place. He was then arrested for driving under the influence of alcohol and disobeying a stop sign. After he was arrested, the defendant stated to the officer that he was drinking but he did not hurt anybody and he should not be arrested. Implied consent warn-

ings were read from a card, and the defendant said he heard and understood them and would take a "breathalyzer" test. The officer administered the test, which showed the defendant's blood level was .15. He was then read *Miranda* warnings by another officer and answered a series of questions to complete an alcohol influence report. He admitted drinking six to seven beers prior to his arrest.

At the hearing on the motion to suppress, the officer gave his opinion that the defendant was under the influence of alcohol. The defendant stated he would not have agreed to take the tests if he had known he could refuse. The court found it was not a sham stop; the officer had a duty to further investigate when he saw the defendant stagger and smelled alcohol; and, there was no invasion of the defendant's person. The motion to suppress was denied, and the sobriety tests were admitted.

On May 31, in a bench trial, the court, based on a stipulation of facts, found the defendant guilty of driving while intoxicated, fined him $100 and costs. The enforcement of the judgment was stayed pending this appeal.

Defendant contends the "field sobriety" tests performed before his arrest constitute a violation of his fourth amendment rights to privacy under the United States Constitution and his rights of privacy in his physical coordination ability under article 1, section 6, of the Illinois Constitution. This court, in *People v. Krueger* (1968), 99 Ill. App. 2d 431, 437-38, held that such field sobriety tests are proper and admissible. That question was also considered by this court in *People v. Roberts* (1983), 115 Ill. App. 3d 384, when the defendant claimed evidence of his refusal to take "field sobriety" tests was error. We held that there is no underlying constitutional or statutory right to refuse to take physical performance sobriety tests. (*People v. Roberts* (1983), 115 Ill. App. 3d 384, 388; see also *People v. Miller* (1983), 113 Ill. App. 3d 845, 847.) Evidence of the refusal of a defendant to submit to a field test for sobriety has been held to be evidence of a defendant's guilty conscience. Further, the admission of such testimony does not violate the right of an accused against self-incrimination or privacy. See *People v. Townes* (1985), 130 Ill. App. 3d 844, 858.

Indeed, the United States Supreme Court considered the problem in a case similar to the case at bar. (*Berkemer v. McCarty* (1984), 468 U.S. 420, 82 L. Ed. 2d 317, 104 S. Ct. 3138.) In *Berkemer*, an officer saw defendant's car weaving and forced him to stop and exit his car. The officer observed the defendant had difficulty in standing and ordered the defendant to perform field sobriety tests. He was asked if he had been drinking and responded that he had two beers and

smoked marijuana. The defendant was then arrested. In affirming the propriety of the stop and the tests under the fifth amendment safeguards as proscribed by *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, the Supreme Court in *Berkemer* held:

"Turning to the case before us, we find nothing in the record that indicates that respondent should have been Miranda warnings at any point prior to the time Trooper Williams placed him under arrest. For the reasons indicated above, we reject the contention that the initial stop of respondent's car, by itself, rendered him 'in custody.' And respondent has failed to demonstrate that, at any time between the initial stop and the arrest, he was subjected to restraints comparable to those associated with a formal arrest. Only a short period of time elapsed between the stop and the arrest. [Footnote omitted.] At no point during that interval was respondent informed that his detention would not be temporary. *** Nor do other aspects of the interaction of Williams and respondent support the contention that respondent was exposed to 'custodial interrogation' at the scene of the stop. From aught that appears in the stipulation of facts, a single police officer asked respondent a modest number of questions and requested him to perform a simple balancing test at a location visible to passing motorists. Treatment of this sort cannot fairly be characterized as the functional equivalent of formal arrest." 468 U.S. 420, 441-42, 82 L. Ed. 2d 317, 335-36, 104 S. Ct. 3138, 3151-52.

Under the facts of this case the officer certainly made a routine traffic stop. His suspicions were aroused and the questions and tests that followed were reasonable and proper. We find that the officer followed a reasonable course of action in the manner in which he investigated this case. We hold that there was no violation of any right of privacy or self-incrimination in administering the sobriety tests before placing the defendant under arrest. The trial court was proper in its rulings and, therefore, we affirm.

Affirmed.

UNVERZAGT and HOPF, JJ., concur.