THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. GARY G. BUGBEE, Defendant-Appellee.

Second District   No. 2—89—0758

Opinion filed August 23, 1990.

Daniel A. Fish, State's Attorney, of Dixon (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

No brief filed for appellee.

JUSTICE INGLIS delivered the opinion of the court:

Defendant, Gary G. Bugbee, was charged with driving under the influence of alcohol (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501(a)), driving while his driver's license was revoked (Ill. Rev. Stat. 1987, ch. 95½, par. 6—303) and improper lane usage (Ill. Rev. Stat. 1987, ch. 95½, par. 11—709). Pursuant to Supreme Court Rule 604(a)(1) (107 Ill. 2d R. 604(a)(1)), the State appeals the trial court's order granting defendant's oral motion to suppress evidence. We reverse and remand.

The record provides the following facts. On behalf of the State, Deputy Tom Lehman testified that on July 20, 1987, at 4 a.m., he was on patrol and driving westbound on Route 30, west of U.S. 251, when he observed headlights coming at him in his own lane. Lehman pulled off of the road, and the other car drove eastbound past Lehman while in the westbound lane. Lehman turned his patrol car around and pursued the other car. In approximately two miles he caught up with the other car and paced it at a speed in excess of 80 miles per hour.

Lehman then activated his lights and siren, and the other vehicle stopped approximately one-half mile farther down the road. After the other vehicle pulled over to the shoulder of the road, Lehman approached it and asked the driver, whom he identified as defendant, for his identification and driver's license.

Lehman testified that upon his first contact with defendant, he smelled a strong odor of alcohol and observed defendant's eyes to be very bloodshot and watery. Defendant fumbled through his wallet and told Lehman that his driver's license had been revoked. Lehman noticed that defendant had a hard time speaking and that his speech was very slurred, mumbled and thick-tongued. Lehman asked defendant's name and birthdate in order to confirm the revocation of defendant's license and, at that point, placed defendant under arrest for driving with a revoked license. Lehman testified that he then advised defendant, "since I smelled the strong odor of alcohol on his breath and person I would have to give him some field sobriety tests to determine if he was fit in my opinion to drive a motor vehicle."

At this point in the trial, defense counsel asked to approach the bench and, in a side-bar conference, stated that since defendant was under arrest and had not been advised of his *Miranda* rights, anything he said thereafter was inadmissible.

Out of the jury's presence, defense counsel requested that the trial court suppress any statements defendant made following his arrest until such time as he was read his rights. Deputy Lehman resumed the stand for purposes of an offer of proof and testified that he did not read defendant his *Miranda* rights until just before questioning him on an

alcohol influence report while at the police station.

Defense counsel renewed his request for suppression of the evidence, and the trial court found that, since defendant was under arrest, any statements made by him thereafter, without *Miranda* warnings, would be suppressed. The court further ruled that the results of the field sobriety tests would not be suppressed as they were nontestimonial in nature. Following some additional argument, the trial court reiterated its ruling and clarified it by characterizing defendant's recitation of the alphabet as testimonial evidence and thus included in the suppression order.

The State's Attorney indicated that the State would proceed with the trial; however, before the trial could resume, defense counsel posed the question of whether the suppression order included defendant's refusal to take a breathalyzer test. The trial court found that the deputy's reading of the warning to motorists constituted custodial interrogation and that defendant's response thereto was testimonial in nature; thus, defendant's refusal to take the breathalyzer test would be suppressed. At this point, the State's Attorney asked that the question be certified for purposes of appeal, and the trial court declared a mistrial. The State filed a certificate of impairment and a timely notice of appeal.

The issues presented in this appeal are whether the trial court erred in suppressing evidence of: (1) defendant's refusal to take a breath test; and (2) defendant's recitation of the alphabet during a field sobriety test.

At the outset, we note that defendant has not submitted an appellee's brief in this case. We review the State's appellate contentions in accordance with the holding of *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128.

■ We first consider the State's contention that the trial court should have denied defendant's motion to suppress, which was presented orally at trial over two years after defendant's arrest, as being untimely. (See *People v. Hughes* (1989), 181 Ill. App. 3d 300, 303-04.) The State concedes, as it must, that it failed to object to defendant's motion on this basis at trial. Nevertheless, appellate counsel argues that we should consider the timeliness of defendant's motion as a matter of plain error, citing *People v. Oswald* (1982), 106 Ill. App. 3d 645. In *Oswald*, we observed that the waiver rule applies to the State as well as to defendants. (106 Ill. App. 3d at 649.) Although we agree with the State's contention that defendant certainly had the opportunity to make such a motion at any time prior to trial, we nevertheless conclude that the State waived any objection it might have had regarding the timeliness of defendant's motion by failing to make any objection whatsoever on the record.

■ We next consider whether the trial court's order suppressing evidence in this case was erroneous. With respect to defendant's refusal to take a breathalyzer test, both the United States Supreme Court, in *South Dakota v. Neville* (1983), 459 U.S. 553, 74 L. Ed. 2d 748, 103 S. Ct. 916, and the Illinois Supreme Court in *People v. Rolfingsmeyer* (1984), 101 Ill. 2d 137, have conclusively answered the question of whether a motorist's refusal to submit to a chemical test is an act protected by the constitutional privilege against self-incrimination. Relying in large part on its earlier decision in *Schmerber v. California* (1966), 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826, the Supreme Court in *Neville* held that the admission into evidence of a motorist's refusal to submit to a blood-alcohol test did not constitute a fifth amendment violation and thus was not protected by the privilege against self-incrimination. *Neville*, 459 U.S. at 564, 74 L. Ed. 2d at 759, 103 S. Ct. at 923.

■ In *Rolfingsmeyer*, the Illinois Supreme Court considered the constitutionality of section 11—501.2(c) of the Illinois Vehicle Code (Ill. Rev. Stat. 1981, ch. 95½, par. 11—501.2(c)), which provided that a motorist's refusal to submit to a chemical test was admissible in civil and criminal proceedings which were based on acts the motorist allegedly committed while driving under the influence of alcohol and/or drugs. Following the holding of *Neville*, the court concluded, *inter alia*, that the statute did not violate a defendant's privilege against self-incrimination because a motorist's right to remain silent did not give him a right to refuse a breath test; thus, evidence of a refusal was not constitutionally protected. (*Rolfingsmeyer*, 101 Ill. 2d at 141-42.) In view of the explicit holdings in *Neville* and *Rolfingsmeyer*, the trial court's order suppressing evidence of defendant's refusal to submit to a breath-analysis test was clearly erroneous and must be reversed. See also *People v. Thomas* (1990), 199 Ill. App. 3d 79, 96.

With respect to the order suppressing defendant's recitation of the alphabet, the law is not so clear. In fact, the Supreme Court has declined to address this issue in two recent decisions. In *Pennsylvania v. Bruder* (1988), 488 U.S. 9, 102 L. Ed. 2d 172, 109 S. Ct. 205, a police officer stopped the defendant motorist and asked him to perform various field sobriety tests, including recitation of the alphabet. The officer also asked the defendant whether he had been drinking. The defendant failed all of the tests and answered that he had been drinking. The officer then arrested the defendant and gave him his *Miranda* warnings. The defendant was later convicted of DUI. The Pennsylvania superior court reversed the defendant's conviction on the ground that the defendant's statements were testimonial utterances that should have been suppressed since the defendant had not yet been read his rights. The Su-

preme Court reversed, holding that ordinary traffic stops do not involve custody for purposes of a defendant's rights under *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. (*Bruder*, 488 U.S. at 11, 102 L. Ed. 2d at 176-77, 109 S. Ct. at 207.) In a footnote, the Court noted that it did not reach the issue of whether the defendant's recitation of the alphabet in response to custodial questioning was testimonial and thus inadmissible under *Miranda*. (*Bruder*, 488 U.S. at 11 n.3, 102 L. Ed. 2d at 177 n.3, 109 S. Ct. at 207 n.3.) This court reached a similar result in *People v. Saturday* (1985), 135 Ill. App. 3d 1052, where we held that a police officer administering sobriety tests to a motorist *before* placing him under arrest did not violate the motorist's right to privacy or his privilege against self-incrimination. *Saturday*, 135 Ill. App. 3d at 1055.

More recently, the Supreme Court declined to consider whether a DUI defendant's counting backward from 10 as a field sobriety test was testimonial and thus protected by the privilege against self-incrimination. (See *Pennsylvania v. Muniz* (1990), 496 U.S. ___, ___ n.17, 110 L. Ed. 2d 528, 553 n.17, 110 S. Ct. 2638, 2651 n.17.) Muniz was arrested for DUI but was not advised of his *Miranda* rights prior to being videotaped in two interviews at police headquarters. The police asked Muniz numerous "routine booking questions" (his name, address, etc.) as well as the date of his sixth birthday. Muniz was not able to answer the latter question. Police also had Muniz perform several sobriety tests which involved both verbal and physical coordination and asked him to submit to a breath test, which he refused. Muniz was then read his *Miranda* rights. At trial, the prosecution introduced and the trial court accepted the audio and visual portions of the two taped interviews, and Muniz was subsequently convicted.

The Pennsylvania superior court reversed the conviction, holding that all of Muniz's verbalizations were testimonial and, thus, the audio portions of the tapes should have been suppressed in their entirety. On review, the Supreme Court held that only Muniz's response to the "sixth birthday question" should have been suppressed because his other verbalizations were either merely physical evidence (*e.g.*, his slurred speech showed a lack of muscular coordination) or were simply responses to "carefully scripted instructions" which were not " 'words or actions' constituting custodial interrogation." (*Muniz*, 496 U.S. at ___, 110 L. Ed. 2d at 553, 110 S. Ct. at 2651.) Nevertheless, Justice Brennan, writing for a plurality of the court, indicated in footnote 17 his willingness to conclude that Muniz's counting or failure to count was testimonial and therefore protected; Justice Brennan, however, found it unnecessary to answer this question. 496 U.S. at ___ n.17, 110 L. Ed.

2d at 553 n.17, 110 S. Ct. at 2651 n.17.

In a separate opinion, Chief Justice Rehnquist noted that "[t]he need for the use of the human voice does not automatically make an answer testimonial." (*Muniz*, 496 U.S. at ___, 110 L. Ed. 2d at 555, 110 S. Ct. at 2653 (Rehnquist, C.J., concurring in part and dissenting in part).) Reaching a similar conclusion, the Texas court of appeals has stated:

> "[A] recitation of the alphabet and counting backward are not testimonial in nature because these communications are physical evidence of the functioning of appellant's mental and physical faculties. The performance of these sobriety tests shows the condition of a suspect's body. Any indication of intoxication comes from a suspect's demeanor, the manner in which he speaks, and whether he has the mental ability to perform the tests correctly. These communications do not amount to an admission of guilt by appellant nor do they indicate a knowledge of facts which incriminate him or tend to incriminate him." *Chadwick v. State* (Tex. App. 1988), 766 S.W.2d 819, 821.

Similar results have been reached by courts in several other jurisdictions. (See *State v. Superior Court* (Ariz. App. 1987), 154 Ariz. 275, 278, 742 P.2d 286, 289; *Oxholm v. District of Columbia* (D.C. App. 1983), 464 A.2d 113, 114; *Commonwealth v. Carey* (1988), 26 Mass. App. Ct. 339, 340-41, 526 N.E.2d 1329, 1331; *People v. Burhans* (1988), 166 Mich. App. 758, 762, 421 N.W.2d 285, 288; *State v. Medenbach* (1980), 48 Or. App. 133, 138, 616 P.2d 543, 545; *State v. Meek* (S.D. 1989), 444 N.W.2d 48, 50; *State v. Haefer* (1982), 110 Wis. 2d 381, 386-87, 328 N.W.2d 894, 897.) As the *Medenbach* court noted, a defendant motorist's manner of speech and his ability or inability to recite the alphabet correctly were not testimonial in nature. Rather, a motorist's response to such a test was simply physical evidence "having nothing to do with what the motorist may admit or confess." (*Medenbach*, 48 Or. App. at 139, 616 P.2d at 545.) The District of Columbia Appellate Court similarly reasoned that a defendant's recitation of the alphabet did not reveal the defendant's personal knowledge but simply tested his physical coordination. (See *Oxholm*, 464 A.2d at 114.) Likewise, the Arizona Appellate Court concluded that tests in which a motorist must recite the alphabet or count were intended to reveal evidence of the motorist's physical condition and were not intended to reveal the motorist's subjective knowledge or thought processes. (*State v. Superior Court*, 154 Ariz. at 278, 742 P.2d at 289.) The *Haefer* court determined that the defendant's utterances disclosed the *physical* manifestations of the defendant's intoxication. (110 Wis. 2d at 386-87, 328 N.W.2d at 897.) The Massachusetts

Appellate Court summarized this issue as follows:

> "Performance of field sobriety tests does not implicate the Fifth Amendment to the Constitution of the United States because it involves no 'testimonial evidence' in the sense that phrase is understood. [Citation.] As is the case with fingerprinting, photographing, measuring, or asking a suspect to stand, walk, or talk, a sobriety test requires the suspect to permit himself to be observed; it does not ask the suspect to reveal his mind." *Carey*, 26 Mass. App. at 340-41, 526 N.E.2d at 1331.

■■ We concur with the opinions of numerous appellate courts in other jurisdictions that have held that a defendant motorist's response to a request to recite the alphabet or count does not constitute a testimonial response, even if the motorist is in police custody at the time the response is sought. As Chief Justice Rehnquist noted, the mere use of the human voice does not automatically render a defendant's answer testimonial. (See *Muniz*, 496 U.S. at ____, 110 L. Ed. 2d at 555, 110 S. Ct. at 2653 (Rehnquist, C.J., concurring in part and dissenting in part).) Whether defendant in this case recited the alphabet correctly would merely provide physical evidence of the functioning of his mental and physical faculties. (See *Chadwick*, 766 S.W.2d at 821.) It would reveal nothing more than coordination on his part and would not reveal any subjective knowledge or thought processes which might tend to incriminate him.

■■ ■ It is well settled that the privilege against self-incrimination does not preclude the State from compelling a defendant to produce real or physical evidence. (*Schmerber*, 384 U.S. at 764, 16 L. Ed. 2d at 916, 86 S. Ct. at 1832.) Thus, we conclude that the trial court improperly suppressed as testimonial evidence defendant's response to Deputy Lehman's request that he recite the alphabet. Defendant's response to this inquiry constitutes physical evidence pertaining to the degree of his intoxication at the time he was arrested. The suppression order must be reversed.

In view of the foregoing, the order of the circuit court of Lee County is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

REINHARD and McLAREN, JJ., concur.