STATE of North Dakota, Plaintiff and Appellee,

v.

Susan Kay ZUMMACH, Defendant and Appellant.

Cr. No. 900198.

Supreme Court of North Dakota.

April 2, 1991.

**746**

Mark R. Boening, Asst. S. Atty. (argued), Fargo, for plaintiff and appellee.

Nelson Law Office, Fargo, for defendant and appellant; argued by Cash H. Aaland.

GIERKE, Justice.

Susan Kay Zummach appeals from a judgment of conviction finding her guilty of driving a motor vehicle while having a blood alcohol concentration of at least .10%. We reverse.

On January 16, 1990, Zummach was stopped by Deputy DuWayne Nitschke after he observed Zummach driving her vehicle partially on the shoulder of Cass County Highway 20. In speaking with Zummach, the Deputy noticed an odor of alcohol about her, that her eyes were bloodshot, that her face was red and flushed, that she appeared nervous and that her speech was slurred. He brought Zummach back to his vehicle for identifying information and it was then that he requested that she recite the alphabet. Zummach failed the field sobriety tests that were given to her and an A.L.E.R.T. test at the scene. She was not read her Miranda rights prior to the field sobriety tests. She was arrested for driving a motor vehicle while under the influence of alcohol in excess of .10%. Zummach was transported to the Cass County Jail where an intoxilizer test was performed resulting in a .12% blood alcohol concentration.

On appeal, Zummach argues that the trial court erred in admitting into evidence statements made by Zummach prior to the *Miranda* [1] warning being given to her and

that the jury instruction relating to chemical tests for intoxication created an "impermissible conclusive presumption" that shifted the burden of proof to her.

█ Zummach's motion *in limine* to suppress the alphabet recitation evidence was denied because it was not timely and because it was not testimonial communication.

This court stated in *City of Wahpeton v. Skoog*, 300 N.W.2d 243, 245 (N.D.1980):

"Field sobriety tests are based on the relationship between intoxication and the loss of coordination which intoxication causes. These tests do not force the subject to betray his subjective knowledge through his communicative facilities. They only compel the suspect to exhibit his physical characteristics of coordination as a source of real or physical evidence which may be testified to by the officer observing the test."

A recitation of the alphabet is not testimonial in nature because the communication is physical evidence of the functioning of the defendant's mental and physical faculties. The alphabet test provides evidence of physical coordination and verbal articulation both of which are affected by alcohol consumption. Performance of the alphabet test did not reveal any subjective knowledge or thought processes of Zummach and therefore did not supply any communication within the protection of her privilege against self-incrimination. *See State v. Fasching*, 453 N.W.2d 761 (N.D.1990). This view is in accordance with a vast majority of the states that have considered this issue. *See, e.g., People v. Bugbee*, 201 Ill.App.3d 952, 147 Ill.Dec. 381, 559 N.E.2d 554 (1990), *State v. Meek*, 444 N.W.2d 48 (S.D.1989), *People v. Burhans*, 166 Mich. App. 758, 421 N.W.2d 285 (1988), *McAvoy v. State*, 70 Md.App. 661, 523 A.2d 618 (1987), *Oxholm v. District of Columbia*, 464 A.2d 113 (D.C.App.1983).

█ Finally, Zummach argues that the jury instruction given regarding chemical tests for intoxication [2] created an impermis-

**1.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**2.** The jury instruction read:

sible conclusive presumption that the test was fairly administered merely because it was received in evidence. The jury instruction read in part:

"The results of such chemical analysis shall be received in evidence when it is shown that the test was fairly administered, provided that a test of a person's breath and the result thereof is further shown to have been performed according to the methods and/or with devices approved by the state toxicologist and by an individual possessing a certificate of qualification to administer the test issued by the state toxicologist."

This court recently reviewed a nearly identical instruction in *State v. Vogel*, 467 N.W.2d 86 (N.D.1991), and held that this instruction shifted the burden to the defendant to disprove fair administration of the test. The language of Section 39–20–07(5), N.D.C.C., was improperly included in the instruction to the jury because it has only to do with the judge's preliminary function of admitting evidence; it has nothing to do with the jury's function of weighing the evidence. This instruction substantially impaired the truth finding function of the jury by shifting the burden to Zummach to disprove fair administration of the test. This impairment was not cured by other instructions. We conclude that the instruction was prejudicial. *See, Vogel, supra.*

We reverse and remand for a new trial with proper instructions to the jury.

ERICKSTAD, C.J., and VANDE WALLE and MESCHKE, JJ., concur.

LEVINE, J., concurs in the result.

"Upon the trial of a criminal action arising out of acts alleged to have been committed by any person driving or in actual physical control of a motor vehicle while under the influence of intoxicating liquor, evidence of the amount of alcohol in the person's blood at the time of the act alleged as shown by a chemical analysis of his breath is admissible.

A person having a blood alcohol concentration of at least ten one-hundredths of one percent by weight at the time of the performance of a chemical test within two hours after driving or being in physical control of a vehicle is under the influence of intoxicating liquor at the time of driving or being in physical control of a vehicle.

The results of such chemical analysis shall be received in evidence when it is shown that the test was fairly administered, provided that a test of a person's breath and the result thereof is further shown to have been performed according to the methods and/or with devices approved by the state toxicologist and by an individual possessing a certificate of qualification to administer the test issued by the state toxicologist. The state toxicologist is authorized to approve satisfactory techniques, devices, and methods of chemical analysis and to determine the qualifications of individuals to conduct such analysis, and shall issue a certificate to all qualified operators who shall exhibit the certificate upon demand by the person requested to take the chemical test. The state toxicologist may appoint, train, certify and supervise field inspectors of breath testing equipment and its operation, and the inspectors shall report the findings of any inspection to the state toxicologist for appropriate action. Upon approval of the methods and devices and techniques required to perform such tests and the persons qualified to administer them, the state toxicologist shall prepare and file written record of such approval with the clerk of the district court in each county within the state which shall include:

(a) An annual register of the specific testing devices currently approved including serial number, location, and the date and results of last inspection.

(b) An annual register of current qualified and certified operators of said devices stating the date of certification and its expiration.

(c) The operational checklist and forms prescribing the methods and techniques currently approved by the state toxicologist in using such devices during the administration of the tests.

Copies of the above records certified by the clerk of the district court shall be admitted as prima facie evidence of the matters stated therein."