(825 P.2d 1169)

No. 66,286

STATE OF KANSAS, *Appellee*, v. DUANE L. MAZE, *Appellant*.

Opinion filed February 14, 1992.

*Patricia H. Jenkins*, of Alexander, Floodman, Casey & Jenkins, Chtd., of Wichita, for appellant.

*Jeffrey E. Goering*, assistant district attorney, *Nola Foulston*, district attorney, and *Robert T. Stephan*, attorney general, for appellee.

Before BRISCOE, C.J., ELLIOTT and LARSON, JJ.

LARSON, J.: Duane L. Maze appeals his convictions for operating a vehicle while under the influence of alcohol, running a stop sign, failure to maintain a single lane of traffic, failure to have operable headlights, and failure to have headlights lit when required.

The factual background to this case is unremarkable. Maze had been to a party and had consumed some alcoholic beverages. He left the party late at night in his employer's vehicle. The alternator

on the vehicle failed and Maze was driving the vehicle without the lights on when he was stopped for traffic infractions.

Maze contends the trial court erred in admitting into evidence the results of the field sobriety tests and a deficient breathalyzer test. Maze further argues that the admission of the breathalyzer test results placed him in double jeopardy and that, under the circumstances, he did not violate the traffic laws.

*It was not reversible error for the trial court to admit the results of the field sobriety tests.*

The crux of Maze's first argument is that Sedgwick County Deputy W.R. Edwards was required to immediately give him his *Miranda* warnings because Edwards had no intention of allowing Maze to leave the place where he had been stopped. Edwards' testimony specifically denied that Maze was in custody or that he had made any decision to arrest Maze for driving while under the influence of alcohol and the other traffic offenses at that time.

Edwards detected a strong odor of alcohol from Maze and noted that he walked in a stumbling, staggering fashion, and had difficulty maintaining his balance. Maze performed field sobriety tests consisting of the horizontal nystagmus gaze test, a one-legged stand test, a heel-to-toe test, and the recitation of the alphabet test. All of the tests were performed incompletely, inadequately, and in a manner indicating Maze was noticeably impaired.

At this point, Maze was advised that he was being placed in custody for possible driving while under the influence of alcohol plus the traffic violations, and he was given his *Miranda* warning.

Maze's argument that the foregoing procedure violates his rights against self-incrimination under the Fifth Amendment because all the test results were "testimonial evidence" is without merit.

In *State v. Faidley*, 202 Kan. 517, 450 P.2d 20 (1969), the issue was whether defendant's Fifth Amendment rights were violated by the admission at trial of a heel-to-toe balance test because a *Miranda* warning had not been given prior to defendant's taking the test. The Kansas Supreme Court stated:

"While it has been held that the rule of *Miranda* begins to operate when an individual is taken into custody or is otherwise deprived of his freedom of action in any significant way [citation omitted], the issue of this appeal hinges upon the scope of the privilege against self-incrimination as contained

in Section 10 of the [Kansas] Bill of Rights and the Fifth Amendment." 202 Kan. at 520.

The court determined that

"compelling the defendant merely to perform the coordination or sobriety test on the highway for observation by the patrolman involved no compulsion of the accused to give evidence having testimonial significance. . . . There was no forced communication by the defendant to disclose any knowledge he might have 'from his own mouth.' " 202 Kan. at 521-22.

In *State v. Jones,* 3 Kan. App. 2d 553, 555-56, 598 P.2d 192 (1979), our court held that: "[C]oordination tests performed on the highway after being stopped on suspicion of driving while under the influence of intoxicating liquor do not violate the defendant's privilege against self-incrimination."

There is merit, however, in Maze's contention that his inability to recite the alphabet, which was evidence used against him at the time of the trial, is testimonial in nature and protected by his Fifth Amendment privilege against compulsory incrimination. In *Pennsylvania v. Muniz,* 496 U.S. 582, 110 L. Ed. 2d 528, 554-55, 110 S. Ct. 2638 (1990), a request made to Muniz to state the date of his sixth birthday was deemed testimonial and suppressed because it was given prior to a *Miranda* warning.

Although four Justices were of the view that the seven questions at issue constituted custodial interrogation regardless of the fact they were not intended to elicit information for investigative purposes, the *Muniz* Court determined Muniz's answers to questions regarding his name, address, height, weight, eye color, date of birth, and current age were admissible because "the questions [fell] within a 'routine booking question' exception" to *Miranda.* 110 L. Ed. 2d at 552. Chief Justice Rehnquist, joined by Justices White, Blackmun, and Stevens, concluded that Muniz's response to the "booking" questions were not testimonial and, therefore, did not warrant application of the Fifth Amendment privilege. 110 L. Ed. 2d at 555.

The question regarding the date of Muniz's sixth birthday was deemed testimonial because it explicitly or implicitly related to the assertion of a fact or belief where the suspect confronts the "trilemma" of truth, falsity or silence. 110 L. Ed. 2d at 549.

Justice Brennan, in delivering the opinion of the Court, stated:

"Although the text [Fifth Amendment] does not delineate the ways in which a person might be made a 'witness against himself,' cf. *Schmerber v. California*, 384 U.S. 757, 761-762, n.6, 16 L. Ed. 2d 908, 86 S. Ct. 1826 (1966), we have long held that the privilege does not protect a suspect from being· compelled by the State to produce 'real or physical evidence.' *Id.*, at 764, 16 L. Ed. 2d 908, 86 S. Ct. 1826. Rather, the privilege 'protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature.' *Id.*, at 761, 16 L. Ed. 2d 908, 86 S. Ct. 1826. '[I]n order to be testimonial, an accused's communication must itself, explicitly or implicitly, relate a factual assertion or disclose information. Only then is a person compelled to be a "witness" against himself.' *Doe v. United States*, 487 U.S. 201, 210, 101 L. Ed. 2d 184, 108 S. Ct. 2341 (1988)." 110 L. Ed. 2d at 543-44.

"We have since applied the distinction between 'real or physical' and 'testimonial' evidence in other contexts where the evidence could be produced only through some volitional act on the part of the suspect. In *United States v. Wade*, 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926 (1967), we held that a suspect could be compelled to participate in a lineup and to repeat a phrase provided by the police· so that witnesses could view him and listen to his voice. We explained that requiring his presence and speech at a lineup reflected 'compulsion of the accused to exhibit his physical characteristics, not compulsion to disclose any knowledge he might have.' *Id.*, at 222, 18 L. Ed. 2d 1149, 87 S. Ct. at 1926; see *id.*, at 222-223, 18 L. Ed. 2d 1149, 87 S. Ct. 1926 (suspect was 'required to use his voice as an identifying physical characteristic'). In *Gilbert v. California*, 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951 (1967), we held that a suspect could be compelled to provide a handwriting exemplar, explaining that such an exemplar, 'in contrast to the content of what is written, like the voice or body itself, is an identifying physical characteristic outside [the privilege's] protection.' *Id.*, at 266-267, 18 L. Ed. 2d 1178, 87 S. Ct. 1951. And in *United States v. Dionisio*, 410 U.S. 1, 35 L. Ed. 2d 67 93 ˙S. Ct. 764 (1973), we held that suspects could be compelled to read a transcript in order to provide a voice exemplar, explaining that the 'voice recordings were to be used solely to measure the physical properties of the· witnesses' voices, not for the testimonial or communicative content of what was to be said.' *Id.*, at 7, 35 L. Ed. 2d 67, 93 S. Ct. 764.

"Under *Schmerber* and its progeny, we agree with the Commonwealth that any slurring of speech and other evidence of lack of muscular coordination revealed by Muniz's responses to Officer Hosterman's direct questions constitute nontestimonial components of those responses. Requiring a suspect to reveal the physical manner in which he articulates words, like requiring him to reveal the physical properties of the sound produced by his voice, see *Dionisio, supra*, does not, without more, compel him to provide a 'testimonial' response for purposes of the privilege." 110 L. Ed. 2d at 545-46.

The Supreme Court did not explore the outer boundaries of what is "testimonial," which leaves us without ultimate authority in determining if the recitation of the alphabet is testimonial in nature.

Our research has failed to find any Kansas case directly on point on the issue of whether the constitutional privilege of self-incrimination is violated if a person stopped for a traffic violation is asked to recite the alphabet before a *Miranda* warning is given.

The United States District Court for the District of Kansas has recently been presented with the question of whether recitation of the alphabet during field sobriety tests violates the privilege against self-incrimination. The court found that it does not. *Stange v. Worden*, 756 F.Supp. 508 (D. Kan. 1991). The *Stange* court recognized that *Muniz* did not decide whether recitation of the alphabet was testimonial, 110 L. Ed. 2d at 553, n.17, but reasoned recitation of the alphabet went beyond physical performance because it involved an audible and cognitive response. Judge Saffels held the task of reciting the alphabet, like counting aloud, required so minimal an assertion of fact that it strained constitutional analysis to find the response testimonial and protected under the Fifth Amendment. 756 F. Supp. at 510.

In *Edwards v. Bray*, 688 F.2d 91 (10th Cir. 1982), the petitioner had been stopped by a police officer and, when he appeared to be under the influence of alcohol, was asked to perform certain field sobriety tests, including recitation of the alphabet. After the performance of the tests was evaluated, the officer determined the petitioner was intoxicated, arrested him, and gave him a *Miranda* warning. The Tenth Circuit cited *Miranda* and *Rhode Island v. Innis*, 446 U.S. 291, 64 L. Ed. 2d 297, 100 S. Ct. 1682 (1980), in ruling that there was

"no constitutional infirmity in the questions asked [the petitioner.] The questions were not 'reasonably likely to elicit an incriminating response from the suspect' in the sense condemned by *Miranda* and *Innis*; they were merely part of or incidental to the roadside sobriety test. . . . [The officer] asked [the petitioner] to recite the alphabet not to obtain testimony, but to test whether [the petitioner's] memory was impaired." 688 F.2d at 92.

The court concluded:

"Certainly [the petitioner's] inability to recite the alphabet . . . incriminated him . . . [but] [t]he questions asked here did not

require the suspect to disclose his knowledge of his intoxication. They elicited tangible evidence of the physical condition of the suspect's body. The responses were no more testimonial or communicative than a voice exemplar [citation omitted] or a blood sample. [Citation omitted.]" 688 F.2d at 92.

Several jurisdictions have held that requiring a suspect to recite the alphabet does not violate the Fifth Amendment right against self-incrimination. See *Oxholm v. District of Columbia*, 464 A.2d 113, 113-14 (D.C. 1983); *Hughes v. State*, 259 Ga. 227, 378 S.E.2d 853, 854, *cert. denied* 493 U.S. 890 (1989); *People v. Bugbee*, 201 Ill. App. 3d 952, 559 N.E.2d 554 (1990); *McAvoy v. State*, 70 Md. App. 661, 670, 523 A.2d 618 (1987); *State v. Zummach*, 467 N.W.2d 745, 746 (N.D. 1991).

Pennsylvania has found to the contrary, holding that recitation of the alphabet is testimonial and requires *Miranda* warnings before administration of the test. *Com. v. Conway*, 368 Pa. Super. 488, 497-500, 534 A.2d 541 (1987), *rev. denied* 549 A.2d 914 (1988).

Our court has stated: " '[G]eneral on-the-scene questioning of citizens in the factfinding process does not constitute custodial interrogation requiring a *Miranda* warning.' " *State v. Almond*, 15 Kan. App. 2d 585, 586, 811 P.2d 529 (1991). Additionally, "*Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him or her 'in custody.' " *State v. Fritschen*, 247 Kan. 592, Syl. ¶ 2, 802 P.2d 558 (1990).

Although both *State v. Bristor*, 236 Kan. 313, 691 P.2d 1 (1984), and *Standish v. Department of Revenue*, 235 Kan. 900, 683 P.2d 1276 (1984), were Sixth Amendment cases relating to presence of counsel prior to or at the time of blood testing, both contain references to giving *Miranda* warnings. In *Standish*, the Kansas Supreme Court stated:

"The *Miranda* safeguards apply regardless of the nature or severity of the offense for which the accused is suspected or arrested. Persons temporarily detained pursuant to an ordinary traffic stop are not 'in custody,' and need not be given the warnings. But as soon as the suspect is arrested or his or her 'freedom of action is curtailed to a "degree associated with formal arrest," ' " the *Miranda* safeguards become applicable and the warnings must be given. *Berkemer v. McCarty*, 468 U.S. 420, 82 L. Ed. 2d 317, 104 S. Ct. 3138 (1984). Officer Buczinski followed the proper procedure in giving

Standish the *Miranda* warnings as soon as Standish was substantially detained, arrested, or in custody." 235 Kan. at 904.

None of these Kansas cases answer the question left unanswered by *Muniz* of whether recitation of the alphabet by a suspect is testimonial.

Officer Edwards determined Maze had schooling through the 10th grade, and Maze specifically said he knew his alphabet. Maze had been asked to take nine steps in performing the heel-to-toe test, and we cannot see how the recitation of the alphabet is materially different from the counting required in the performance of that test.

We hold recitation of the alphabet is not testimonial in that it does not require a suspect to communicate any personal beliefs or knowledge of facts.

This holding is consistent with our decision in *State v. Leroy*, 15 Kan. App. 2d 68, 72, 803 P.2d 577 (1990), where we held: "Only questions that require suspects to communicate any personal beliefs or knowledge of facts meet the definition of communicative testimony that qualifies as custodial interrogation."

*The trial court did not err in admitting into evidence the results of the deficient breath test.*

Deputy Edwards certified to the State of Kansas that Maze failed to take a chemical test. Maze's license was suspended because he did nothing when the test was first offered, and he did not blow into the machine long enough to produce a sufficient sample when given a second opportunity. The second test, however, did produce a reading, albeit an unreliable one, which the trial court admitted into evidence. Maze claims the test result should have been suppressed.

K.S.A. 8-1006(a) states:

"The provisions of K.S.A. 8-1005 and amendments thereto shall not be construed as limiting the introduction of any other competent evidence bearing upon the question of whether or not the defendant was under the influence of alcohol or drugs, or both."

K.S.A. 8-1013(f) states: "Other competent evidence includes: . . . (2) readings obtained from a partial alcohol concentration test on a breath testing machine."

Deputy Edwards testified the machine would process any sample given, but that a deficient sample would result in a reading

lower than a sufficient one. Although Maze merely puffed his cheeks and did not produce a sufficient sample, the one obtained did show a reading and was statutorily admitted into evidence. Maze's contention to the contrary is without merit. The insufficient test may be considered since it is specifically allowed by statute.

*The admission of the breathalyzer test did not place Maze in double jeopardy even though his driver's license previously had been suspended for refusal to take the test.*

Maze's driver's license previously had been suspended for his refusal to take the breathalyzer tests. He contends he was twice placed in jeopardy when he was thereafter prosecuted for driving while under the influence. This contention is without merit.

The decision to suspend Maze's driving privileges is an administrative action and not a criminal proceeding. *Angle v. Kansas Dept. of Revenue*, 12 Kan. App. 2d 756, 758 P.2d 226, *rev. denied* 243 Kan. 777 (1988).

Kansas courts have previously held that imposition of administrative sanctions and criminal prosecutions are not prohibited under the double jeopardy clause. *Collins v. State*, 215 Kan. 489, 524 P.2d 715 (1974).

In *State v. Quarles*, 13 Kan. App. 2d 51, 761 P.2d 317, *rev. denied* 244 Kan. 740 (1988), we held double jeopardy did not apply to probation revocation proceedings since they are not essentially criminal in nature. The Tenth Circuit Court of Appeals has held the combination of administrative punishment and criminal conviction does not amount to double jeopardy in violation of the Fifth Amendment. *Hutchison v. United States*, 450 F.2d 930, 931 (10th Cir. 1971). See also *United States v. Hedges*, 458 F.2d 188, 190 (10th Cir. 1972), which held: "[A]dministrative punishment does not render a subsequent judicial prosecution violative of the Fifth Amendment prohibition of double jeopardy." Although in *State v. Kelly*, 14 Kan. App. 2d 182, 786 P.2d 623 (1990), we held that suppression of evidence was the proper remedy when the defendant invoked and was denied his right to counsel in violation of K.S.A. 1987 Supp. 8-1001(f)(1)(E), there was no request for counsel here; therefore, *Kelly* has no application.

Most jurisdictions have specifically held that proceedings to suspend or revoke a driver's license are civil or administrative in nature and that a subsequent prosecution for driving while under the influence based upon the same events that led to the suspension or revocation does not amount to double jeopardy. *Ellis v. Pierce*, 230 Cal. App. 3d 1557, 1562, 282 Cal. Rptr. 93 (1991); *Sheffield v. State*, 184 Ga. App. 141, 361 S.E.2d 28 (1987); *Price v. Reed*, 725 P.2d 1254, 1260 (Okla. 1986); *State v. Conley*, 639 S.W.2d 435, 436 (Tenn. 1982); *Burrows v. Texas Dept. of Public Safety*, 740 S.W.2d 19, 20-21 (Tex. App. 1987).

We also hold Maze's contention that suspension of his driver's license and conviction of driving while under the influence are multiple punishments for the same offense, prohibited by *U.S. v. Halper*, 490 U.S. 435, 104 L. Ed. 2d 487, 109 S. Ct. 1892 (1989), is without merit. The facts in *Halper* are materially different from this action, and its holding is not authority for Maze's contention.

The revocation of a driver's license is part of a civil/regulatory scheme that serves a vastly different governmental purpose from criminal punishment. Our State's interest is to foster safety by temporarily removing from public thoroughfares those licensees who have exhibited dangerous behavior, which interest is grossly different from the criminal penalties that are available in a driving while under the influence prosecution.

*Exigent circumstances did not exist that would provide a defense to the traffic violations.*

Maze claims his attempt to return a malfunctioning wrecker truck to Wichita should justify giving some latitude to a driver in his predicament. K.S.A. 21-3204 states: "A person may be guilty of an offense without having criminal intent if the crime is a misdemeanor or traffic infraction and the statute defining the offense clearly indicates a legislative purpose to impose absolute liability for the conduct described." " 'Courts have turned to construing statutes and regulations which make no mention of intent as dispensing with it and holding that the guilty act alone makes out the crime.' " K.S.A. 21-3204, Judicial Council Notes. See *City of Wichita v. Hull*, 11 Kan. App. 2d 441, 444-45, 724

P.2d 699 (1986). Deputy Edwards observed Maze violating the traffic statutes charged. This contention has no merit.

Affirmed.